[Crim. No. 3494.    Second Dist., Div. One.    Feb. 9, 1942.]

THE PEOPLE, Respondent, v. ARTHUR PALMER, Appellant.

Morris Lavine and Scheinman & Scheinman for Appellant.

Earl Warren, Attorney General, and Bayard Rhone, Deputy Attorney General, for Respondent.

WHITE, J.—On October 10, 1928, through an indictment returned by the Grand Jury of Los Angeles County, defendant was charged in five counts with the crime of grand theft, while an additional count alleged the commission by him of the crime of forgery. At the time of his arraignment on October 16, 1928, defendant waived reading of the indictment, and upon his motion the time for plea was continued until October 19. On the last-named date defendant entered his plea of not guilty, and the cause was set down for trial on November 19, 1928. For various causes and with defendant's consent, his trial date was continued several times until February 25, 1929, upon which date the matter was called for trial. The clerk's transcript reflects that at this time defendant was personally present in court with his counsel, N. Freedman and S. W. Thompson; that a jury was impaneled and sworn to try the cause; the indictment was read and defendant's plea of not guilty was stated to the jury. Thereupon, according to the clerk's transcript, the following transpired: "By leave of Court, the defendant withdraws his plea of 'Not Guilty' heretofore entered, regularly enters his plea of 'Guilty as charged in Count 1 of the indictment' and the pronouncing of judgment and sentence is set for February 28, 1929, at 9:30 A. M. Other counts are ordered off calendar. S. W. Thompson is allowed to withdraw as counsel for defendant. Defendant to remain on bail." When, pursuant to the foregoing, the case was again called for the purpose of pronouncing judgment and sentence, the defendant was not present. Thereupon his bond was declared forfeited and a bench warrant issued for his arrest.

Nothing more appears in the clerk's transcript for a period

of more than twelve years, when on March 12, 1941, the defendant was personally present in court with counsel and asked permission to withdraw his plea of guilty theretofore entered. This application, made in the form of a motion, was denied. However, upon the request of the defendant, he was allowed to file an application for probation. The time for passing upon the application and pronouncing of judgment and sentence was continued from time to time until May 6, 1941. At that time the defendant made a motion for a new trial. His motion for leave to withdraw his plea of guilty and enter a not guilty plea was reconsidered and again denied. The application for probation was denied, and thereupon judgment of imprisonment in the state prison was pronounced. From the judgment of conviction; from what is designated "the failure of the trial court to pass on the motion for a new trial"; from an order denying defendant leave to withdraw his plea of guilty under section 1018 of the Penal Code and enter a plea of not guilty, and from the order denying defendant's motion after judgment requesting that such judgment be set aside, this appeal is prosecuted.

Appellant's contention that the court failed or refused to rule upon his motion for a new trial is without merit. The clerk's transcript on appeal, which we have before us, shows the following as having occurred on May 6, 1941: "Defendant moves the Court for a new trial. Said motion is argued. . . . The Court orders that defendant's motion for a new trial be and the same is hereby denied." We must presume that in preparing the record on appeal official duty was regularly performed (Code Civ. Proc., sec. 1963, subd. 15), and the verity of such record is therefore binding upon us. (*People* v. *Jordan*, 66 Cal. 10 [4 Pac. 773, 56 Am. Rep. 73]; *Brush* v. *Pacific Elec. Ry. Co.*, 58 Cal. App. 501 [208 Pac. 997]; *Delijian* v. *Rosenburg*, 134 Cal. App. 264 [25 Pac. (2d) 228].)

It is next contended that appellant's plea of guilty should have been set aside pursuant to the provisions of section 1018 of the Penal Code and a plea of not guilty entered. In support of this claim it is urged:

"A. The appellant at the time of entering the plea was denied the right and benefit of counsel;

"B. His free will and judgment were overcome by extraneous circumstances;

"C. The plea was not freely and understandingly entered;

"D. The plea was the result of a failure to settle civil litigation;

"E. Cogent, strong and convincing evidence of appellant's innocence was presented."

It is argued that appellant was without the advice or benefit of counsel. In that regard, at the hearing of the motion to set aside the plea of guilty, the court took testimony. Defendant himself testified that at the time he pleaded guilty he had never read nor heard read the indictment; that several continuances had been had because of the pendency of negotiations to settle the civil liability upon the part of defendant to the complaining witness; that his attorney, Mr. Thompson, had not discussed the case with him nor with any of his witnesses, and that none of the latter were subpoenaed into court; that he had employed Attorney Freedman only on the evening before the jury was impaneled, and that the last-mentioned attorney was unfamiliar with the facts of his case. Appellant further testified that when his first attorney sought from the court leave to withdraw as counsel, the attorney stated in the presence of the jury that he lacked confidence in his client and that the latter was entirely undependable. All of these facts, appellant urges, show that his own free will and judgment were overcome and that because of his distress of body and mind begotten of his plight, he yielded to the suggestion of one of his attorneys that he enter a plea of guilty.

Defendant's attorney, S. W. Thompson, however, testified that following the return of the indictment and when the grand jury transcript was delivered to him, he conferred with his client and thoroughly and completely discussed with him the nature of the criminal charges lodged against appellant, as well as the issues framed in a civil action brought by the complainant against him in connection with the transactions which formed the basis of the criminal charges. Attorney Thompson further testified that as the final date set for the trial approached he endeavored to contact appellant, but was unable to do so; that he sent for appellant and communicated with the latter's wife, but that appellant got in touch with him only two or three days before the trial date, at which time he advised appellant that no further continuances could be had and that the case must proceed to trial. The court was also advised of the fact that following the entry of his plea of guilty appellant fled the jurisdiction and for

some twelve years remained a fugitive from justice. Under all the facts and circumstances here present, the court did not abuse its discretion in refusing to vacate and set aside the plea of guilty and substitute therefor a plea of not guilty. The record supports neither the unwarranted attack made upon defendant's counsel, S. W. Thompson, nor appellant's contention that he was in a state of confusion, highly nervous and in an upset condition when he gave his consent to the change of his plea from not guilty to guilty.

Section 1018 of the Penal Code is designed to purify and keep pure the administration of justice, and was never intended to enable the guilty to escape punishment. Appellant's claim that he entered his plea of guilty solely on the advice of his counsel representing him in the case avails him nothing, because this falls far short of being a fraudulently obtained plea. The facts in the instant case are not at all parallel to the situation disclosed in *People* v. *Schwarz,* 201 Cal. 309 [257 Pac. 71], relied upon by appellant. The provisions of section 1018 of the Penal Code should only be utilized upon a strong and convincing showing of the deprivation of legal rights by extrinsic causes. To hold otherwise would amount to validation and recognition of a rule that would prove most disastrous in its results so far as order and system in the administration of justice are concerned. The law zealously guards the right of an accused to a fair trial and as well to representation by counsel at all stages of the proceedings against him; but to hold that a defendant represented by able counsel may during his trial change his not guilty plea to that of guilty, flee from the court's jurisdiction, and after twelve years assert his innocence and be permitted to change his plea to not guilty after material witnesses may have died or their whereabouts be unknown, would be to countenance a practice that would reduce to mockery the administration of even and exact justice.

We are not impressed by appellant's argument that strong and convincing proof of his innocence is provided by the decision of our Supreme Court in the case of *Kiekhoefer* v. *United States Nat. Bank,* 2 Cal. (2d) 98 [39 Pac. (2d) 807, 96 A. L. R. 1244]. This was a civil action commenced by the complaining witness against the bank growing out of the use by appellant of a power of attorney given him by the plaintiff in the civil action. Instead of tending to prove appellant's innocence, we feel that the opinion in the

civil case, as well as the facts therein narrated, indicate the contrary. The decision points out that appellant herein received a check out of escrow in the amount of $5,654.91, drawn by the bank in favor of the complaining witness herein. The check was delivered by Palmer, the appellant in the case at bar, who indorsed the same as follows: "Emma Martha Storz" (the name of the complaining witness at that time, she having thereafter remarried) "by Arthur Palmer, Attorney in Fact. Arthur Palmer." Bearing this indorsement, the check was presented by Palmer to the Bank of Italy in Pasadena. The bank, however, refused to accept or pay the check as thus indorsed. Appellant took the check out of the Bank of Italy, cancelled the indorsements then on the check by drawing lines through the same, and again presented the check to said bank with new indorsements thereon as follows:

"Pay to the order of Arthur Palmer Company,

"Emma Martha Storz,

"Pay to the order of Bank of Italy National Trust & Savings Association,

"Arthur Palmer Company."

Arthur Palmer Company was the name in which appellant Palmer carried on his business. The name "Emma Martha Storz" in the new indorsement had been written by Palmer himself. In fact, her name on said indorsement had been traced on the back of the check by Palmer so as to simulate the true signature of Emma Martha Storz. The bank cashed the check and gave Palmer credit for the amount thereof, and thereafter collected the same from the defendant bank upon which it was drawn. The holding in the case was simply that in an action to recover money paid on the alleged forged or illegal indorsement of a check, where plaintiff gave a power of attorney to an agent authorizing him to receive money and debts due plaintiff and indorse checks, there was no principle, either legal or equitable, which would justify a recovery from the bank which paid the check upon such indorsement. The foregoing excerpts from the decision, coupled with a reading of the latter in its entirety, instead of establishing appellant's innocence, tend strongly to raise at least substantial inferences pointing to his guilt of embezzlement.

Instead of entering his plea of guilty by reason of any fraud, duress or other fact which might have affected or overreached his own will or judgment, we are impressed from a

reading of the entire record before us that the trial court was justified in assuming that the motive that influenced appellant to enter such guilty plea was his realization of guilt, coupled with the fact that further continuance of his trial was refused by the court, and that by admitting his guilt he would be afforded an opportunity to flee as he did from the jurisdiction of the court.

A reversal is urged by appellant on the additional ground that the judgment against him was not pronounced not less than two nor more than five days after the entry of his plea of guilty. (Pen. Code, secs. 1191, 1202.) It is conceded that following the entry of his plea of guilty in 1929 appellant fled from California and was not apprehended until his arrest in New York for another crime, and after serving a term of imprisonment therefor he was returned to this state by the authorities after a lapse of some twelve years from the date of entry of his plea of guilty in the California court. It is true, as contended by appellant, that the law provides that judgment must be pronounced within a prescribed time, but it has been held that the determination of a motion for a new trial and the pronouncement of judgment in a criminal case are procedural in their nature, and in the absence of a miscarriage of justice will not be disturbed on appeal even though such proceedings took place after a lapse of the statutory time therefor. (*People* v. *Pollock*, 31 Cal. App. (2d) 747, 761 [89 Pac. (2d) 128].) We have no hesitancy in saying that there is no miscarriage of justice in the present case, and that the delay complained of in the matter of pronouncing judgment does not constitute reversible error. There is further justification for so holding, and that is because appellant, during the time intervening between the entry of his guilty plea and the pronouncement of judgment, by his own acts evaded the court, and by his willful conduct in fleeing he himself prevented the imposition of sentence within the time provided by law. Such being the case, he will not be permitted to reap an advantage from his own unlawful act. (*Palmquist* v. *State*, 30 Fla. 73 [11 So. 521]; *O'Steen* v. *State*, 92 Fla. 1062 [111 So. 725].) It has been repeatedly held in this state that the failure of the court to pronounce judgment within the limited time ordained by section 1191 of the Penal Code does not automatically entitle defendant to a new trial pursuant to the provisions of section 1202 of the same code, nor is jurisdiction voided by

such delay in every case, but only in cases where a miscarriage of justice results. (Const., art. VI, sec. 4½; *People* v. *Zuvela,* 191 Cal. 223 [215 Pac. 907]; *People* v. *Farber,* 19 Cal. App. (2d) 189 [64 Pac. (2d) 1138]; *People* v. *Rubens,* 11 Cal. App. (2d) 576 [54 Pac. (2d) 98, 1107]; *People* v. *Stroff,* 134 Cal. App. 670 [26 Pac. (2d) 315]; *People* v. *Miller,* 130 Cal. App. 191 [19 Pac. (2d) 814]; *People* v. *Carter,* 130 Cal. App. 95 [19 Pac. (2d) 843]; *People* v. *Howard,* 10 Cal. App. (2d) 258 [52 Pac. (2d) 283]; 97 A. L. R. 805, note.)

■ Equally without merit is appellant's contention that he is entitled to a new trial because of the unavailability of the reporter's transcript of the proceedings had on February 25, 1929. It appears that the reporter destroyed his notes some five years after making them, and also that the reporter died within the twelve-year period of appellant's absence from the state. The reporter's transcript is not essential to the disposition of the issues raised on this appeal. Defendant's plea of guilty was taken down by the clerk of the court, entered in the minutes, and is now before us in the clerk's transcript. Section 1017 of the Penal Code requires only that the plea be entered in the minutes and that it need not be taken down in shorthand by the reporter unless so ordered by the court.

■ Finally, appellant contends that he was denied the verdict of a jury on the question of his guilt or innocence. This contention is answered by the record, which shows that upon his plea of not guilty appellant was accorded a jury trial. Indeed, a jury was impaneled to try him and was in the process of so doing when he changed his plea to guilty, thereby removing the triable issue raised by his plea of not guilty. Upon the entry of the guilty plea nothing remained for the jury to pass upon, for it is only by a plea of not guilty that the material allegations of the indictment or information are put in issue for trial and determination by the jury, or the court in the event of a waiver of the jury.

For the foregoing reasons, the judgment and all orders appealed from are, and each is, affirmed.

York, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 9, 1942. Houser, J., and Carter, J., voted for a hearing.